UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| BRAMM HATTINGH, | : | **CIVIL NO. 1:09-CV-1088** |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Smyser) |
| | : | |
| DB REAL ESTATE ASSETS I, LLC | : | |
| | : | |
| Defendant | : | |


## **REPORT AND RECOMMENDATION**


**Background**.

        This case involves an executory lease agreement,

containing conditions precedent to the start of the lease term.

The plaintiff, the putative lessor, claims that the defendant,

the putative lessee, breached the executory lease agreement by

failing to follow through with the construction of a Dunkin'

Donuts restaurant on Highway Route 15 near Dillsburg,

Pennsylvania after the executory lease agreement had been

entered.  The plaintiff is Bramm Hattingh.  The defendant is DB

Real Estate Assets I, LLC (DB).[1]


The complaint was filed in the Court of Common Pleas of

York County on May 14, 2009 and the case was removed to this

court on June 8, 2009.  The court has diversity jurisdiction,

in that the plaintiff is a Pennsylvania resident and the

defendant is a Massachusetts Company.[2]  28 U.S.C. § 1332.  An

answer (Doc. 2) was filed on July 2, 2009.


The defendant filed a motion (Doc. 27) for summary

judgment and a brief (Doc. 28) in support on January 4, 2011.

A LR 56.1 statement (Doc. 29) was filed.  A brief (Doc. 34) in

opposition was filed on January 24, 2011.[3]  The plaintiff's LR

56.1 statement (Doc. 37) was filed separately from the

plaintiff's response (Doc. 38) to the defendant's LR 56.1

statement.  The defendant on February 7, 2011 filed objections

---

1.  Defendant Men at Work, IV, LLC was voluntarily dismissed on
August 24, 2009.  (Doc. 14).

2.  The dismissed defendant was a New York company.

3.  A supplemental brief (Doc. 36) in opposition was also filed on
that date.

(Doc. 40) to the plaintiff's response to the defendant's

statement of material facts and a response (Doc. 41) to the

plaintiff's statement of material facts.  The defendant also

filed a reply brief.  (Doc. 42).


Both parties filed summary judgment evidence, the

defendant's with its motion (Doc. 27) and the plaintiff's with

his brief (Doc. 34) in opposition to the summary judgment

motion.  This Report and Recommendation addresses this summary

judgment motion.


**The Plaintiff's Claim**.

Plaintiff Hattingh's complaint alleges that he and

defendant DB entered into a lease agreement on or about June

29, 2007 for the lease of the property owned by the plaintiff

at 501 U.S. Route 15, Dillsburg, York County, Pennsylvania.

The lease was to be for a term of 20 years.  The term was to

begin to run:

> . . . upon the earlier of (a) one hundred
> twenty (120) days following (I) Lessor's
> delivery of the Premises in the condition
> required under this Lease with Lessor's work
> completed, and (ii) the issuance of all permits

> required for Lessee to perform its construction
> work, if any, and (iii) satisfaction of
> Lessee's Conditions listed below, or (b) upon
> Lessee's opening for business (the "Term
> Commencement Date").

(Complaint, Doc. 1, Exhibit 1, Section Two, Paragraph A). The complaint alleges that the plaintiff did all of the matters that he needed to do to facilitate the issuance of permits for any required construction. It alleges that defendant DB in bad faith failed to submit to Carroll Township a required sketch plan or building plan. The complaint asserts that the failure of the defendant to submit a required sketch plan to the Township was a breach by the defendant of the lease agreement.

The complaint alleges that on March 2, 2009 the plaintiff sent to the defendant a letter stating that the plaintiff considered the defendant to be in default by non-performance under the agreement. The defendant responded that, because the Pennsylvania Department of Transportation (PennDOT) had eliminated egress from the planned Dunkin' Donuts restaurant on to Route 15, and because of changed ingress and ingress between the premises subject to the lease agreement and an adjacent Wendy's restaurant, the defendant "reserved the

right to terminate the lease given that we have not received the benefit of the negotiated lease" unless "the originally agreed upon site plan be reinstated."  The complaint states that PennDOT "did limit egress from Route 15" but that there were "no changes relating to the right-of-ways through Wendy's."  The complaint alleges that there were no provisions in the lease agreement relating to changes in ingress and egress from Route 15.  It is alleged that such restrictions are common whenever there is a change of usage of a property.  The complaint alleges that the restriction of egress on to Route 15 will not materially alter or negatively impact the volume of business by any Dunkin' Donuts shop at this location.

The complaint alleges that after defendant DB learned of the PennDOT decision to limit egress from the premises to Route 15, it did not give notice to the plaintiff of its determination that its business plan was thereby defeated until its March 23, 2009 response to the plaintiff's March 2, 2009 letter.

The complaint alleges that on April 15, 2009 the plaintiff declared the defendant to be in breach of the lease agreement.

The complaint contains a claim of lost revenue under the lease agreement based upon prospective rental payments over 20 years of a total of $1,498,012.50.

Count I of the complaint states the plaintiff's claim of breach of contract against the defendant.

**The Defendant's Answer**.

In its answer (Doc. 2) to the complaint, defendant DB denies that a breach of the lease contract occurred. It asserts that conditions necessary to the commencement of rent under the lease contract were not satisfied and that accordingly no rent is due to the plaintiff. It asserts that the plaintiff acquiesced to the delay of rent commencement until conditions of the lease contract were satisfied for the commencement of rent.

6

**The Defendant's Summary Judgment Position**.

The defendant's summary judgment motion argues that its obligation to pay rent under the agreement never commenced because the conditions under the agreement that were to be met before the lease term was to commence had not been satisfied as of the time of the plaintiff's declaration of a breach. It argues, alternatively, that the plaintiff's claim for accelerated rent payments is not a viable claim because the lease does not contain an acceleration clause. For the reasons stated below, the motion is meritorious as to the first position, and the rent acceleration issue should not be reached.

**Summary Judgment Standard**.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With

respect to an issue on which the nonmoving party bears the

burden of proof, the moving party may discharge that burden by

"'showing'—— that is, pointing out to the district court ——

that there is an absence of evidence to support the nonmoving

party's case." *Id.* at 325. Once the moving party has met its

burden, the nonmoving party may not rest upon the mere

allegations or denials of its pleading; rather, the nonmoving

party must show a genuine dispute by "citing to particular

parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes

of the motion only), admissions, interrogatory answers, or

other materials" or "showing that the materials cited do not

establish the absence . . . of a genuine dispute." Fed.R.Civ.P.

56(c).

     A material factual dispute is a dispute as to a factual

issue the determination of which will affect the outcome of the

trial under governing law. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). "Only disputes over facts that might

affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

Summary judgment is not appropriate when there is a genuine dispute about a material fact. *Id.* at 248. A dispute as to an issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson, supra,* 477 U.S. at 249-50. In determining whether a genuine issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter, but is to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249. The proper inquiry of the court in connection with a motion for summary judgment "is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex, supra*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v.*

*CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex,*

*supra*, 477 U.S. at 323).


**<u>Executory Contracts</u>**.

As stated by the Superior Court of Pennsylvania in

*Janson v. Frost*, 422 Pa.Super. 36, 41 (1993):

> First, the task of interpreting a contract
> is generally performed by a court rather than a
> jury, *Walton v. PNB,* 376 Pa.Super. 329, 545
> A.2d 1383 (1988); Second, where a contract is
> executory on both sides (as was the case here),
> the party seeking the legal enforcement of the
> stipulations of the other party must show a
> compliance with his own. In other words, that
> which is first to be performed must be done or
> tendered before the party who is to do it can
> sustain a suit against the other, 17A
> Am.Jur.2d, §§ 609, 470 ("in the case of a
> concurrent condition, there is no liability
> until the condition is performed or occurs.");
> Third, it is the general rule that where no
> time is agreed upon for the completion of a
> contract, it must be completed within a
> reasonable time under all the circumstances, 8
> P.L.E. Contracts, § 245; 17A Am.Jur.2d, §§ 202,
> 479; Fourth, where contractual promises or
> covenants are mutual and dependent, the failure
> of one party to perform authorizes the other to
> rescind the contract, 17A Am.Jur.2d, §§ 570,
> 574 (Interdependence of contractual provisions,
> in which a material breach occurs by one party,
> entitles the other party to rescind); and
> Fifth, what is a reasonable time within which
> to exercise the right of rescission, when the
> facts are undisputed, is a question of law to

be determined by the court, 8 P.L.E. Contracts,
§ 319.

**Undisputed Facts**.

Based upon the pleadings, the parties' LR 56.1

statements of undisputed facts and the summary judgment

exhibits, we find that the facts that are not in dispute are

that the plaintiff (Hattingh) and the defendant (DB) entered

into a twenty-year commercial lease agreement on June 29, 2007

for property owned by Hattingh located at 501 U.S. Route 15 in

Dillsburg, Pennsylvania.  Hattingh's attorney drafted the

initial draft of the lease.  DB accepted Hattingh's asking

price for rent.  DB inserted conditions into the lease

agreement (Doc. 1, Exhibit 1), including **Section Forty,**

**Lessee's Conditions**.


> **Section Forty, Lessee's Conditions** states:
>
> Lessee shall require satisfaction or waiver of
> the following conditions prior to the Term
> Commencement Date (unless otherwise noted
> herein):
>
> (a) Lessee shall have obtained approval of this
> Lease and the development of the Premises as a
> Dunkin' Donuts/and or Baskin-Robbins in

compliance with Dunkin' Brands, Inc. corporate
approval policies within sixty (60) days of the
Effective Date; and

(b) Lessee shall have received non-disturbance
agreements from Lessor, Lessor's lenders and
ground lessors, if applicable; and

(c) Lessee's receipt from Lessor, and approval
of all applicable covenants, conditions and
restrictions pertaining to the Premises.

(d) Lessee shall have received a commitment for
a policy of leasehold title insurance which
shall be free of any exceptions which are
reasonably unacceptable to Lessee

(e) Lessee shall have received, with due
diligence and without unreasonable delay, all
permits, licenses and approvals necessary for
the construction of Lessee's standard signage
and other improvements, including, but not
limited to, building permits, zoning and
planning board approvals, permits for Lessee's
standard fascia and pylon signs, driveway or
curb cut permits, and a permit authorizing the
operation of a typical Dunkin' Donuts, Dunkin'
Deli and Baskin Robbins shop on the Premises
with a drive-up window and patio area, 7 days
per week, 24 hours per day; and

(f) Lessee having, at its sole cost and
expense, received and approved an environmental
report of the Premises and all applicable
covenants, conditions and restrictions.

The lease term and the rent were under the lease agreement to begin on the Term Commencement Date. The Term Commencement Date was to be the earlier of one hundred twenty (120) days following … (i) Lessor's delivery of the Premises in the condition required under this Lease with Lessor's work completed, and (ii) the issuance of all permits required for Lessee to perform its construction work, if any, and (iii) satisfaction of Lessee's Conditions listed below, or upon Lessee's opening for business. (Doc. 1, Exhibit 1, Section Two). Rent was not to begin before the Term Commencement Date. *Id.*

DB never received the non-disturbance agreements from Hattingh or Hattingh's lenders prior to filing this lawsuit. (Docs. 29, 38 at 16) Hattingh had not requested a non-disturbance agreement until June 2010. *Id.* at 17.

It was discussed at a construction meeting on October 29, 2007 that PennDOT might in considering Hattingh's application for a Highway Occupancy Permit (HOP) change the Route 15 ingress and egress conditions for the premises. *Id.*

14

at 20, 21.  On December 26, 2007, Hattigh applied for a HOP.

On June 19, 2008, PennDOT rejected the application for a HOP,

stating that PennDOT would approve right (ingress) turns into

the premises from Route 15 but would not approve right (egress)

turns from the premises on to Route 15.  On August 27, 2008,

PennDOT issued a HOP, which did not provide for egress from the

premises directly on to Route 15.  *Id.* at 28, 29.

After negotiations and efforts occurred to address the

Route 15 egress concern of DB, involving in part efforts to re-

route motorist seeking to egress from the premises back on to

Route 15 through the driveways associated with the adjacent

Wendy's restaurant, DB informed Hattingh on March 23, 2009 that

the loss of the expected retention of an avenue of egress from

the premises on to Route 15 constituted a change having a

negative impact upon DB's plan.  *Id.* at 29-39.  DB stated to

Hattingh, ". . . we require that the originally agreed upon

site plan be reinstituted such that all methods of ingress and

egress are returned to the state in which they existed on the

date the lease was signed.  If this is not possible, we must

reserve the right to terminate the lease given that we have not received the benefit of the negotiated lease." *Id*. at 39.

On April 15, 2009, Hattingh declared to DB that DB was in breach of the lease agreement. *Id*. at 40. Hattingh assumed or retook possession of the premises and there were no further steps taken by Hattingh or by DB to cause the lease to commence.[4]

**Discussion**.

The summary judgment record does not present, in our view, disputes as to any facts that are material and the issue presented is whether defendant DB breached the executory lease agreement by its position that the change in the site condition as to egress on to Route 15 was a change as to a matter such as it had described in Section Forty (Lessee's Conditions) of the

---

4. In preparation of this section stating the undisputed material facts for purposes of this motion, we have closely considered the evidentiary issues and the arguments as to materiality stated in the plaintiff's responses in Doc. 38 to the defendant's proffered undisputed facts. As discussed in this Report and Recommendation, given that the material issue is whether the lease agreement's Lesser's Conditions were met before the plaintiff declared a breach, the matters alluded to by the plaintiff are not included herein to the extent that they are not relevant.

agreement. DB's argument that Hattingh did not satisfy

conditions precedent to commencement of the lease term refers

to the Lease Agreement condition that approvals to develop a

typical site for the operation of a Dunkin' Donuts, Dunkin'

Deli, Baskin Robbins combination shop with a drive-up window

are to have been received by DB prior to the commencement of

the term of the lease. DB asserts that this condition

precedent was not satisfied before Hattingh declared a breach.

DB asserts, first, that Hattingh had not obtained a non-

disturbance agreement prior to communicating to DB on April 15,

2009 that Hattingh considered DB to have breached the lease

agreement. We will not focus upon the non-disturbance

agreement issue herein because it is evident that this

prospective lessor-lessee relationship came to an end before it

became operative because of the Route 15 egress developments.

The elimination by PennDOT of the option for a Route 15

motorist to have both ingress into and Route 15 egress out of

the planned restaurant defeated in DB's judgment the

suitability of this site for the planned restaurant. Without

highway egress, it was not in DB's view a "typical" site since

as DB sees it a typical Dunkin' Donuts site with a drive-up

17

window has egress back to the road from which the motorist had turned off to become a Dunkin' Donuts consumer. DB considers this to be a necessary element of a Dunkin' Donuts shop with a drive-up window because some motorists will decline to exit the highway if a return to the highway is not easy and not time consuming.

We consider the resolution of this case to be straightforward. The conditions precedent that DB negotiated and that were terms of the executory contract, which was in the first instance drafted by Hattigh, were not met. DB had not yet under the terms of the agreement become a lessee under the agreement. Before DB became a lessee, Hattingh declared a breach. There had not been a breach. No duty on the part of DB to begin the lease term had arisen.

The plaintiff undertakes to identify material issues of fact in dispute, but does not do so. The plaintiff argues that there is evidence that the defendant assumed the risk of an elimination of Route 15 egress. But there is not evidence of this, and the contract does not support this interpretation.

The plaintiff asserts that the defendant had not made highway egress a condition. What DB had done, however, and to which Hattingh had agreed, was to reserve to DB the right not to go forward with the lease agreement unless and until the attributes of a typical site had been accomplished. Hattingh might well have insisted upon more specific contractual indicia of DB's typical site expectations, but did not. The defendant contractually required a "typical" site for a Dunkin' Donuts restaurant with a drive-up window. A standard of typicality is a subjective standard. This standard, importantly, was not placed in to the contract as a neutral or objective contractual provision; i.e., such as that the parties agree that the site shall prove to be a "typical" site, and here is what we mean by that. Rather, the agreement makes it a Lessee's Condition that it be a typical site. Obviously, by the fact of the executory agreement, Hattingh knew that DB when the agreement was entered considered the site to be conditionally typical. Hattingh's agreement to the **Lessor's Conditions** language was an agreement on Hattingh's part that DB would retain discretion to satisfy itself before the agreement took effect that DB would have the attributes of a typical site for a shop with a drive-up window.

DB's acceptance of this language was plainly an acceptance of
DB's contractual right to determine that as the process
unfolded the site would satisfy DB's standard of typicality;
otherwise, Hattingh would not have agreed to such a subjective
standard and to a standard (of typicality) about which the
prospective tenant would plainly know a lot and a landlord
would not necessarily know very much.  The standard is in the
agreement under **Lessee's Conditions,** clearly indicating that
the determination whether the condition was met would (within
reason) be made by the prospective lessee.  The determination
here by DB that the standard was not met does not have the
appearance as Hattingh argues of a disingenuous determination
stated to mask the true reason, i.e., as Hattingh asserts, that
there was a change of plans because changes in the economy were
negatively affecting the sale of donuts.  Rather, although the
potential elimination of Route 15 egress may have arisen
earlier than October 29, 2007, it is not disputed that when the
lease agreement was negotiated there was not a basis for DB to
doubt that egress back to Route 15 would continue to be an
attribute of the premises and it is not disputed that the
egress issue was a development that thwarted the progress of

this prospective lease.  *See* Plaintiff's Brief, Doc. 34, page 2.

The plaintiff cites *Shovel Transfer and Storage, Inc. v. Pa. Liquor Control Board,* 739 A.2d 133, 139 (Pa. 1999), asserting that it supports the plaintiff's assertion that DB is precluded from asserting that the defeat of Route 15 egress was a basis under **Section Forty, Lessee's Conditions** for it to avoid the lease agreement because DB did not plead a frustration of commercial purposes defense.

Here, when the putative lessee contractually required that it be satisfied that the site be a typical site as a condition precedent to the effectiveness of the agreement, it is not raising a frustration of commercial purposes as a defense.  It is relying upon its negotiated contractual right to have the necessary approvals and permits for a typical site.

The lease agreement recites that Hattingh as lessor owns the premises.  The agreement recites that DB as lessee desires to lease the premises for the purpose of conducting a

business of retail food sales.  It provides (Section Two) that the lease term will begin to run upon the earliest of either "(a) one hundred twenty (120) days following (I) Lessor's delivery of the Premises in the Condition required under this Lease with Lessor's work completed, and (ii) the issuance of all permits required for Lessee to perform its construction work, if any, and (iii) satisfaction of Lessee's Conditions listed below [in Section Forty], or (b) upon Lessee's opening for business (the "Term Commencement Date").  It is not disputed that the original term of the lease did not commence by way of an event as described in Section Two occurring.

Hattingh does not set forth a construction to be given to Section Forty (e) of the Agreement that provides, as the plaintiff would have it, that it was not contractually a matter for DB to decide what permits, licenses and approvals defendant lessee would need to acquire to operate a "typical Dunkin' Donuts, Dunkin' Deli and Baskin Robbins shop on the Premises with a drive-up window . . . ."

The inclusion of Section Forty in this executory agreement makes it evident that there would not come to be a landlord-tenant lease if typical site permits and approvals were not obtained.

The lease agreement was an executory contract. Conditions precedent to the lease term did not occur. There was not a breach of the contract by the defendant. The defendant is entitled to summary judgment.

**Recommendation**.

It is recommended that the motion (Doc. 27) of the defendant for summary judgment be granted and that the clerk be directed to close the case.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated:  February 17, 2011.